ANDREW HENRIKSEN, Appellant, v. FRONIE HENRIKSEN,
Appellee.

DECEMBER 13, 1927.

REHEARING DENIED MARCH 10, 1928.

*Naglestad, Pizey & Johnson,* for appellant.

*O. D. Nickle* and *Clay Jensen,* for appellee.

STEVENS, J.—The parties to this action were married March 3, 1905, and were, at the time of the trial, aged 50 and 53 years respectively. Appellee had been divorced and previously married. She secured a divorce from her first husband, remarried, and was a widow at the time of her marriage to appellant. The ground upon which a divorce is asked is cruel and inhuman treatment. The record disclosed a somewhat remarkable state of facts. At the time of the marriage, appellee possessed some money and property, and appellant was engaged in farming, but was heavily in debt. Before they left the farm, all of the prop-

erty of the parties had been dissipated, and appellee had become indebted in the sum of $600. Appellant is a machinist and blacksmith, and for a number of years after he left the farm, was employed in Sioux City as a mechanic. Appellee also secured employment, and worked hard. About September, 1917, appellant secured a blacksmith shop, and engaged in business for himself. He is an expert welder, and soon acquired a good business. During the time he owned and operated the blacksmith shop, appellee worked therein to some extent, kept books, and grew flowers and bulbs for sale. Later, she inherited $13,000 from her father's estate. During the few years appellant ran the blacksmith shop, the parties accumulated substantially $40,000. Perhaps $5,000 of this sum represented the profits from the sale of flowers and bulbs. These accumulations, together with the $13,000 appellee had inherited, were largely invested in bonds. A joint checking account was kept at a bank in Sioux City, and the bonds were taken separately in the names of the respective parties. They were kept in a private box in a bank, to which each had free access. Prior to the commencement of this action, appellee obtained possession of all of the bonds, which she retained at the time of the trial. There was a balance in the joint account in the bank of about $2,400 at that time.

A detailed statement of the evidence will serve no useful purpose. The record is full of crimination and recrimination, and it is not an easy matter to ascertain the truth therefrom. Appellee was apparently the better financier, but appellant was industrious and expert in his trade.

The principal matters relied upon by appellant for a divorce are the alleged nagging of his wife and her oft repeated accusations against him of marital infidelity. Altercations occurred between them, and a few incidents are detailed in the testimony. Upon one occasion, appellee received a cut on her wrist, which necessitated medical treatment; but whether it was purposely or accidentally inflicted is not quite clear,—probably the former. Appellant testified that, upon one occasion, appellee threw a piece of iron at him, and at the same time applied an opprobrious epithet. Both of the parties appear to have been more or less addicted to the use of rather coarse, and perhaps profane, language,—particularly appellant. Appellee evidently believed

that appellant was guilty of gross immorality, and no doubt she frequently charged him therewith. On the question of appellant's chastity, the record is more or less indefinite. The testimony of several witnesses indicating an immoral tendency was offered, but it is, on the whole, insufficient to prove guilt. During some months shortly preceding the commencement of this action, appellee was ill, submitted to one or more severe operations, was nervous, fretful, and doubtless difficult to live with. If she was jealous, she was not wholly without grounds therefor. Numerous neighbors, called as witnesses, testified to many good qualities on the part of both, and from their testimony we conclude that their married life was not always unhappy.

To entitle appellant to a decree of divorce on the ground of cruel and inhuman treatment, two elements must be shown: that is, the treatment must have been cruel and inhuman, and must have been such as to endanger his life. *Freerking v. Freerking,* 19 Iowa 34; *Hill v. Hill,* 201 Iowa 864. That appellant was annoyed and rendered more or less unhappy because of the nagging and accusations of appellee may well be assumed. He testified that, upon one or more occasions, she threatened him with a gun, and that he took it away from her. This is denied by her. Likewise, she denied all other charges of physical violence made by appellant. There is no evidence tending to show that appellant's life was in any respect in danger. He suffered no serious impairment of health, and never at any time received more severe injuries from assaults made upon him by his wife than he, in turn, inflicted upon her. Each explains that, where injury was inflicted upon the other, it was accidental.

We have made every effort to ascertain the truth, and to determine whether or not a decree of divorce should have been granted. Our conclusion is that the evidence fails to sustain the allegations of the petition, or to show that appellant has suffered impairment of his health on account of the matters complained of. Both are to blame, and we shall not undertake at this time to determine which is most at fault. The court divided the joint account equally between the parties. This action was based upon a stipulation between them.

It is now urged by appellant that the court should require appellee to make an accounting, and to return the bonds and property belonging to appellant. The statute provides an ap-

propriate action for the recovery thereof. The court will not, however, attempt a division of property in this action, in the absence of a decree of divorce. *Smith v. Smith,* 179 Iowa 723; *Porter v. Porter,* 190 Iowa 1126.

Section 10469 of the Code of 1924 provides that an action for divorce shall be by equitable proceedings, and no cause of action, save for alimony, shall be joined therewith. Our attention is called to *Woodall v. Woodall,* 204 Iowa 423, which was a proceeding to modify a decree awarding alimony in favor of the wife. An accounting was sought therein, and we held that, as no objection was made thereto, the issue, which was hardly for an accounting, might be determined therein. As stated, the sole question in the *Woodall* case was one of alimony. A divorce had been previously granted. The situation in that case is not analogous to the one before us. An action for an accounting may not be joined in an action for a divorce. In the event that a divorce is granted, the court may well examine into all the facts and circumstances touching the property of the parties, for the purpose of awarding alimony. In this way, something in the nature of an accounting may be involved, as an incident thereto, but not as an original cause of action.

We are persuaded by a careful reading of the record that the decree of the court below is right, and it is—*Affirmed.*

EVANS, C. J., and FAVILLE, ALBERT, and WAGNER, JJ., concur.

KINDIG, J., dissents.